UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

LISETTE PEDROSA,                    :
                     Plaintiff,   :
                                :
          -against-             :
                                :

THE CITY OF NEW YORK, *et al.*,    :
                   Defendants.  :
                                :
------------------------------------------------------------ X

13 Civ. 01890 (LGS)

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge:

      Before the Court is Defendants' Motion for Partial Dismissal of the Complaint.  On

February 25, 2013, Plaintiff Lisette Pedrosa filed suit in New York State Supreme Court alleging

various forms of employment discrimination against the City of New York and five of its

employees who worked in the 25th Precinct of the Police Department of the City of New York

("NYPD").  On March 18, 2013, Defendants removed that action to this Court.  For the reasons

stated below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

      The following facts are taken from Plaintiff's Complaint and exhibits.

### I.    Defendants' Alleged Misconduct Against Plaintiff

      Officer Pedrosa is employed by the NYPD, and is of Puerto Rican descent.  In January

2010, she accepted an offer by Defendant Salvatore Marchese, the newly assigned Special

Operations Lieutenant, to work directly for him in a position with steady hours and days off.

Shortly thereafter, Lieutenant Marchese began making unsolicited advances toward Officer

Pedrosa, including texting her sexually explicit photos, asking her about her sexual activities,

pressuring her to meet outside of work and on two occasions demanding and receiving oral sex.

In late March 2010, after Officer Pedrosa asked Lieutenant Marchese to leave her alone, Lieutenant Marchese became increasingly hostile toward her, burdening her workload with constantly shifting assignments and closely monitoring her every move at work.

In early May 2010, after Lieutenant Marchese "'smacked' [Officer Pedrosa's] buttocks" at work, she complained to Defendant Garfield Edmonds about Lieutenant Marchese's behavior. Lieutenant Edmonds failed to notify the NYPD's Office of Equal Employment Opportunity ("OEEO"), as required by department policy, or Inspector Edward Caban.  Sometime thereafter, in a meeting with Lieutenant Edmonds and Inspector Caban, Lieutenant Marchese expressed his desire to transfer Officer Pedrosa out of his unit because she "'was not doing shit.'"  Inspector Caban transferred her out of the unit on or about May 10, 2010.  Since the transfer and through January 2013, Officer Pedrosa has consistently received poor assignments and unfair discipline, and been precluded from working overtime.  On or about May 17, 2010, Officer Pedrosa reported the misconduct of Lieutenant Marchese and Lieutenant Edmonds to the NYPD's Internal Affairs Bureau ("IAB"), which in turn contacted the OEEO.

On or about December 2, 2010, Officer Pedrosa found the lock on her work locker gone and her police equipment missing.  She reported the incident to Defendant Integrity Control Officer Kevin Coleman, who failed to notify the IAB as required by department policy and then fabricated a report to cover up his failure.  In February and then again in May 2011, to cover up the theft of Officer Pedrosa's property under her command and Sergeant Coleman's failure to notify, Defendant Nilda Hoffman, Deputy Inspector and Commanding Officer of the 25th Precinct, knowingly caused false reports to be written alleging that Officer Pedrosa had left her equipment unsecured.

2

Frustrated by the NYPD's failure to take her complaints of sexual harassment seriously, Officer Pedrosa gave an interview to the New York Daily News.  On June 2, 2011, the Daily News published an article reporting her allegations against Lieutenant Marchese.

In July 2011, the OEEO determined that Officer Pedrosa's allegations of sexual harassment against Lieutenant Marchese were substantiated.  He was issued a Supervisor's Complaint Report for a Schedule 'B' Violation, transferred from the 25th Precinct and ordered to attend a professionalism seminar, which the Complaint characterizes as "a slap on the wrist." The OEEO found that Officer Pedrosa's allegations of retaliation were unsubstantiated.

In December 2011, Officer Pedrosa lodged complaints with the OEEO about retaliation, unfair discipline and Deputy Inspector Hoffman's falsification of records.  The OEEO failed to notify the IAB about Officer Pedrosa's complaint against Deputy Inspector Hoffman as required by department policy.

In January 2012, Officer Pedrosa responded to a citizen's complaint, which she classified as Burglary Second Degree and Grand Larceny Fourth Degree, both index crimes.  Defendant Jessica McRorie asked her to reclassify the complaint as Petit Larceny, a non-index crime, and when Officer Pedrosa refused, Sergeant McRorie changed the classification without Officer Pedrosa's authorization.  Officer Pedrosa reported Sergeant McRorie's behavior to the IAB, which referred the allegations to the NYPD's Quality Assurance Division ("QAD").  In April 2012, the QAD interviewed Officer Pedrosa about Sergeant McRorie.

In May 2012, the OEEO determined that Officer Pedrosa's retaliation claims "did not rise to the level of employment discrimination."

In January 2013, Officer Pedrosa reported her W2 stolen at work.  The theft was never

reported to the IAB.

## II.    NYPD's Alleged Policy Condoning Misconduct

According to the allegations in the Complaint, the NYPD is aware of its persistent problem of white male employees committing quid pro quo sexual harassment and otherwise highly offensive sexual conduct, but has typically responded by refusing to acknowledge their misconduct, imposing disproportionately light penalties and discrediting the accusers.  The Complaint alleges that the NYPD usually responds to complaints of discrimination by filing false allegations of misconduct against, and unfairly disciplining, the complainants.  The NYPD is particularly aggressive against those who speak to the media about their allegations.

In 2008, Former Transit Bureau Captain Jeffrey Kilmas, a white male, pleaded guilty to public lewdness and disorderly conduct after exposing himself in a Queens train station while on duty.  He was penalized 11 vacation days (i.e., suspended without pay for 11 days), but was allowed to keep his full pension.  Captain Kilmas was previously accused of fondling a teenager on a subway train, but the NYPD closed that case as "unfounded."

In 2010, the City paid $300,000 to two male sergeants after Former Lieutenant Kieran Crowe, a white male, was found guilty in an NYPD disciplinary trial of sexually harassing them and creating a lewd and hostile work environment.  Lieutenant Crowe ultimately was forced to retire but allowed to keep his pension, and was penalized 60 vacation days.  The two complainants against Lieutenant Crowe were labeled homophobic, and had allegations of misconduct filed against them when they spoke to the New York Daily News.

In 2007, Former Captain Michael DeBellis, a white male, admitted to exposing himself to a female subordinate at work.  He was forced to retire but allowed to keep his pension, and was

4

penalized 60 vacation days.  After the complainant went public with her case in the New York Daily News, allegations of misconduct were filed against her.  The complainant was subsequently penalized eight vacation days for parking her car in a bus stop.

## III.   Plaintiff's Claims

Based on the foregoing allegations, Officer Pedrosa asserted 25 claims against Defendants.  In her Opposition to the Motion to Dismiss, Plaintiff voluntarily withdrew 13 claims.  The claims that remain are as follows: (i) retaliation under the First Amendment, § 1983 and New York state and city laws, as to all Defendants (Counts IV, XIII, XIX and XXIV); (ii) failure to train and supervise under § 1983, as to Defendant City (Counts VIII and IX); (iii) sexual harassment under § 1983 and New York state and city laws, as to all Defendants (Counts X, XVI and XXI); and (iv) hostile work environment under § 1983 and New York state and city laws, as to all Defendants (Counts XIV, XX and XXV).

## DISCUSSION

Defendants seek to dismiss the following: (i) all claims against all individual Defendants other than Lieutenant Marchese; (ii) the failure to train and supervise claims under § 1983 against the City (Counts VIII and IX); and (iii) the First Amendment retaliation claim against all Defendants (Count IV).

## I.   Standard of Review

On a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  While "'detailed factual allegations'" are not necessary, the pleading must be supported by more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (alteration in original) (quoting *Twombly*, 550 U.S. at 555), *cert. denied*, 133 S. Ct. 846 (2013).  Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2).

Plaintiff points out that the Second Circuit has called "[t]he pleading standard for employment discrimination . . . somewhat of an open question in our circuit," noting the potential conflict between the standard under *Twombly* and the *McDonnell Douglas* standard, the latter of which, if applicable, would require plaintiffs to plead a prima facie case.  *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012).  In *Swierkiewicz v. Sorema N. A.*, the Supreme Court held that the *McDonnell Douglas* standard is "an evidentiary standard" to be applied in the summary judgment context, and "not a pleading requirement."  534 U.S. 506, 510 (2002).  Although the *Swierkiewicz* Court relied for its holding on the more lenient *Conley*

pleading standard that has since been displaced by *Twombly* and *Iqbal*, the *Twombly* Court noted that its holding "does not run counter to *Swierkiewicz* . . . ." 550 U.S. at 547. District courts in this Circuit have continued to cite *Swierkiewicz* for its rejection of the heightened *McDonnell Douglas* standard at the pleading stage. *See,e.g.*, *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010); *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009).

## II.     Claims Against Other Individual Defendants

Defendants move to dismiss the employment discrimination claims against the individual Defendants other than Lieutenant Marchese. They argue that that these other Defendants are not alleged to have acted in a discriminatory way or with any discriminatory purpose, and therefore cannot be liable under federal, state or city laws.

The standards for individual liability under the applicable federal, state and city laws vary somewhat. Under 42 U.S.C. § 1983, "[e]very person" who under the color of state law deprives another of their constitutional or other rights under federal law is liable. To hold an individual defendant liable under § 1983, a plaintiff must allege his or her "personal involvement in the claimed violation . . . ." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see also Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001). Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." *Patterson*, 375 F.3d at 229.

The New York State Human Rights Law ("NYSHRL") prohibits specified acts of discrimination by an employer. N.Y. Exec. Law § 296(1). An individual may be considered an

"employer" if he or she has "an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 57 (2d Cir. 2012) (citing *Patrowich v. Chem. Bank*, 473 N.E.2d 11, 12 (N.Y. 1984)). The NYSHRL also makes it unlawful for any person to retaliate or to "aid, abet, incite, compel or coerce" unlawful discrimination or for any person to retaliate against someone who has opposed or filed a complaint of discrimination. N.Y. Exec. Law § 296(6) (aiding and abetting); *id.* § 296(7) (retaliation).

The New York City Human Rights Law ("NYCHRL") creates direct liability for employment discrimination not only against the employer, but also "an employee or agent thereof." N.Y.C. Admin. Code § 8-107(1)(a). However, this apparent broadening of liability as compared with the NYSHRL is likely not significant as applied, since both the state and city human rights laws create individual liability for aiding and abetting and for retaliation. *See* N.Y.C. Admin. Code § 8-107(6) (aiding and abetting liability for "any person"); *id.* § 8-107(7) (liability for retaliation by "any person engaged in any activity to which this chapter applies"); *see also Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004) (holding that individuals may be held liable for aiding and abetting under the NYSHRL and the NYCHRL if they participate in discriminatory conduct); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

### A.    Sexual Harassment

Defendants seek to dismiss the sexual harassment claims against the individual Defendants other than Lieutenant Marchese. For the reasons discussed below, the § 1983, NYSHRL and NYCHRL sexual harassment claims (Counts X, XVI and XXI) are dismissed

against Defendants Coleman, Hoffman and McRorie, but not Defendant Edmonds.

### 1.      § 1983 (Count X)

Sexual harassment that rises to the level of gender discrimination is actionable under §

1983 as violative of the Fourteenth Amendment right to equal protection.  *See Annis v. Cnty. of*

*Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) (finding the alleged sexual harassment to be

"tantamount to sex discrimination" and therefore actionable as a § 1983 claim); *see also*

*Gierlinger v. N.Y. State Police*, 15 F.3d 32, 34 (2d Cir. 1994) ("[I]n some circumstances a § 1983

claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth

Amendment based on sexual harassment in the workplace.").  To make out a § 1983 gender

discrimination claim, the plaintiff must show that she "suffered purposeful or intentional

discrimination on the basis of gender."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365

F.3d 107, 118 (2d Cir. 2004).

Plaintiff has not pleaded that Defendants Coleman, Hoffman and McRorie were

personally involved in the acts from which the sexual harassment claim arises.  The alleged

misconduct of Sergeant Coleman and Deputy Inspector Hoffman – the filing of false reports –

arose out of an alleged theft from Plaintiff's work locker that occurred six months after

Lieutenant Marchese's alleged harassment of Plaintiff ended.  The alleged misconduct of

Sergeant McRorie – reclassifying a citizen's complaint without authorization – happened more

than a year thereafter.  Plaintiff does not allege that these Defendants participated in or furthered

the harassment, that they were motivated by discriminatory intent, or even that they knew about

the sexual harassment.  To the extent the Complaint adds any context to these events, it suggests

that Sergeant Coleman and Deputy Inspector Hoffman caused false reports to be filed in order to

cover up their failures to prevent and report the theft, not to further or otherwise participate in any sexual harassment of Plaintiff.  Sergeant McRorie's alleged misconduct is pleaded in a vacuum, with no explanation as to why she reclassified the citizen's complaint or even why her act was improper or adverse to Plaintiff.

As for Lieutenant Edmonds, Plaintiff alleges that she complained to him "about [Lieutenant] Marchese's conduct" and that Lieutenant Edmonds did not report her complaint "as required by Department policy."  In *Patterson*, the Second Circuit noted three types of personal involvement sufficient for individual liability under § 1983: "direct participation," "gross negligence in the supervision of subordinates who committed the wrongful acts," and "failure to take action upon receiving information that constitutional violations are occurring."  375 F.3d at 229.  Although the court there ultimately based its ruling on each individual defendant's direct participation in the plaintiff's harassment, rendering the enumeration of the other two types of personal involvement dicta, that language nevertheless tends to support a finding that Lieutenant Edmonds's "failure to take action" constitutes his personal involvement in Lieutenant Marchese's alleged sexual harassment of Plaintiff.

Regardless, the Court refrains from ruling at this time on Lieutenant Edmonds's personal involvement for purposes of § 1983 for two reasons.  First, as will be further discussed below, the Court is denying Defendants' motion to dismiss Plaintiff's sexual harassment claims under New York state and city laws as to Lieutenant Edmonds, because both the NYSHRL and the NYCHRL explicitly provide for aiding and abetting liability.  As such, ruling now on Lieutenant Edmonds's personal involvement for purposes of § 1983 one way or another would not affect the scope of discovery.  Moreover, the Court could benefit from further briefing, which the parties

10

could submit at the summary judgment stage should the issue still be relevant.

### 2.    NYSHRL and NYCHRL (Counts XVI & XXI)

Sexual harassment claims under the NYSHRL, like all NYSHRL claims, are governed by the same standards as those under Title VII of the Civil Rights Act of 1964.  *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) ("'[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII.'" (quoting *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997))), *cert. denied*, 132 S. Ct. 1744 (2012).  Courts have analyzed sexual harassment claims under Title VII and the NYSHRL under two theories: hostile work environment – addressed in its own section below – and quid pro quo.  *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006).  "To state a quid pro quo claim, [a plaintiff] must show a 'tangible employment action,' i.e., that an 'explicit . . . alteration[ ] in the terms or conditions of employment' resulted from her refusal to submit to [the defendant supervisor's] sexual advances."  *Id.* at 604 (quoting *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004)).

Under the NYCHRL, a plaintiff need not allege a materially adverse employment action as required by the NYSHRL.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013).  The plaintiff must plead only that she was "'treated less well than other employees because of her gender.'"  *Id.* at 110 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)).

As discussed above, the Complaint does not connect Sergeant Coleman, Deputy Inspector Hoffman or Sergeant McRorie to the sexual harassment claim.  With regard to Lieutenant Edmonds, the Complaint alleges that he failed to report Plaintiff's complaint of

Lieutenant Marchese's sexual harassment as required, and thus sufficiently alleges aiding and abetting Lieutenant Marchese's sexual harassment.

Accordingly, the NYSHRL and NYCHRL claims of sexual harassment based on a quid pro quo theory are dismissed against Defendants Coleman, Hoffman and McRorie but not Defendant Edmonds.

**B.    Hostile Work Environment**

Defendants move to dismiss the hostile work environment claims against the individual Defendants other than Lieutenant Marchese.  For the reasons discussed below, the § 1983, NYSHRL and NYCHRL hostile work environment claims (Counts XIV, XX and XXV) are dismissed against Defendants Coleman, Hoffman and McRorie, but not Defendant Edmonds.

**1.    § 1983 and NYSHRL (Counts XIV & XX)**

The elements of a hostile work environment claim are the same under § 1983 and the NYSHRL.  *See Patterson*, 375 F.3d at 225; *see also Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, . . . Section 1983, and the New York State Human Rights Law is essentially the same."); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).  To state a hostile work environment claim, a plaintiff must:

> [P]lead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex."

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)).

Like her sexual harassment claims, Plaintiff's hostile work environment claims under §

1983 and the NYSHRL fail as to Defendants Coleman, Hoffman and McRorie.  To the extent

that Sergeant Coleman, Deputy Inspector Hoffman and Sergeant McRorie helped create a hostile

work environment for Plaintiff through their misconduct, the Complaint fails to allege that they

did so *because of* Plaintiff's gender.

Just as Lieutenant Edmonds's failure to report Plaintiff's complaint serves as a sufficient

basis for his aiding and abetting liability under the NYSHRL sexual harassment claim, it also

serves as a sufficient basis for his aiding and abetting liability under the NYSHRL hostile work

environment claim.  *See* N.Y. Exec. Law § 296(6).  His alleged failure to report is also likely

actionable under § 1983 as a "failure to take action upon receiving information that constitutional

violations are occurring," *see Patterson*, 375 F.3d at 229, but for the same reasons discussed

above, the Court refrains from ruling on the § 1983 issue with respect to Lieutenant Edmonds at

this time.

### 2.      NYCHRL (Count XXV)

A hostile work environment claim under the NYCHRL, unlike that under its state

counterpart, does not require the complained-of conduct to be "severe and pervasive." *Mihalik*,

715 F.3d at 114.  "Instead, a focus on unequal treatment based on gender . . . is in fact the

approach that is most faithful to the uniquely broad and remedial purposes of the local statute."

*Id.* (internal quotation marks omitted).

That distinction, however, does not result in a different outcome for Plaintiff's hostile

work environment claim under the NYCHRL.  Defendants do not challenge the NYCHRL

hostile work environment claim against Lieutenant Marchese.  That statute, like its state

counterpart, creates individual aiding and abetting liability for Lieutenant Edmonds, who failed

to take action in spite of his knowledge.  Similarly, for the same reasons that the Complaint fails to plead a NYSHRL hostile work environment claim against Defendants Coleman, Hoffman and McRorie – i.e., that it does not allege any of them acted because of Plaintiff's gender – it also fails to plead a NYCHRL hostile work environment claim.

As such, the NYCHRL hostile work environment claim is dismissed as to Defendants Coleman, Hoffman and McRorie but not as to Defendant Edmonds.

### C.      Retaliation

Defendants move to dismiss the retaliation claims against the individual Defendants other than Lieutenant Marchese.  For the reasons discussed below, the § 1983, NYSHRL and NYCHRL retaliation claims (Counts XIII, XIX and XXIV) are dismissed against Defendants Coleman, Hoffman, McRorie and Edmonds.

### 1.      § 1983 (Count XIII)

Plaintiff's § 1983 claim for retaliation is dismissed.  Retaliation claims under § 1983 are commonly brought as First Amendment free speech claims, but are not actionable as Fourteenth Amendment equal protection claims.  *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1995) (citing *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340-41 (11th Cir. 1995); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989)).  The Complaint does not specify the federal right violated by the alleged retaliation.  To the extent the claim is based on the Fourteenth Amendment, it is dismissed for failure to state a claim.  To the extent it is based on the First Amendment, it is identical to Plaintiff's First Amendment claim in Count IV, and like that claim is dismissed for lack of merit, as discussed below.

### 2.      NYSHRL (Count XIX)

Plaintiff's NYSHRL retaliation claim against Defendants Coleman, Hoffman, McRorie and Edmonds is dismissed because the Complaint contains no allegations that these Defendants' allegedly wrongful acts were retaliatory.

The NYSHRL makes it unlawful "for any person engaged in any [prohibited discrimination] to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law. § 296(7).  To state a retaliation claim under the NYSHRL, a plaintiff must plead the following elements: "(1) [the plaintiff] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [the plaintiff]; and (3) there exists a causal connection between the protected activity and the adverse action."  *See Patane*, 508 F.3d at 115 (setting forth Title VII retaliation claim pleading requirements); *Rojas*, 660 F.3d at 107 n.10 (holding that NYSHRL and Title VII claims are governed by same standards); *see also McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001) (holding same specifically with respect to retaliation claims under both the NYSHRL and Title VII).

Defendants do not challenge the sufficiency of the retaliation claim against Lieutenant Marchese.  The Complaint contains many allegations that Plaintiff engaged in protected activity by opposing and filing various complaints about alleged discriminatory acts: (i) In March 2010, Plaintiff terminated the out-of-work meetings and sexual relations with Lieutenant Marchese and, on or about March 20, 2010, told him to leave her alone; (ii) on or about May 8, 2010, she complained to Lieutenant Edmonds about Lieutenant Marchese's misconduct; (iii) on or about May 17, 2010, Plaintiff reported the misconduct of Lieutenant Marchese and Lieutenant

15

Edmonds to the IAB; (iv) on or about June 2, 2011, she gave an interview to the New York Daily

News, which published an article about her allegations of sexual harassment by Lieutenant

Marchese; (v) on or about December 7, 2011, Plaintiff complained to the OEEO about Deputy

Inspector Hoffman's misconduct; (vi) sometime after January 22, 2012, she complained to the

IAB about Sergeant McRorie's misconduct; and (vii) on or about April 27, 2012, she was

interviewed by the QAD about Sergeant McRorie's misconduct.

However, the Complaint contains no allegation that Sergeant Coleman or Deputy

Inspector Hoffman knew of any of this protected activity at the time they committed the acts she

alleges were retaliatory.  Although one might assume that they learned of the June 2, 2011, Daily

News article on or shortly after that date, the allegedly wrongful acts of Defendants Coleman and

Hoffman predated the article.

Sergeant McRorie's reclassification of a citizen's complaint allegedly occurred after the

article, but Plaintiff does not allege how this was an employment action that disadvantaged

Plaintiff, or that there was any causal connection between Plaintiff's statements to the media and

Sergeant McRorie's actions.

Plaintiff alleges that she "continued to receive poor assignments, unfair discipline and

[was] precluded from working overtime as the other police officers" after the article, but does not

attribute these actions to any particular Defendant or allege that they were caused by anyone who

knew of her complaints.

The Complaint does allege that Lieutenant Edmonds knew about Plaintiff's rejection of

Lieutenant Marchese when Lieutenant Edmonds failed to report Plaintiff's complaint to the

OEEO.  However, these allegations are insufficient to support a retaliation claim because the

Complaint does not allege the requisite causal connection.  Specifically, it does not allege that Lieutenant Edmonds failed to report Plaintiff's complaint in order to retaliate, nor does it allege any facts from which to infer that Lieutenant Edmonds had cause to retaliate against Plaintiff for rejecting Lieutenant Marchese.  It is therefore unnecessary to reach the question of whether Plaintiff's rejection of Lieutenant Marchese's alleged sexual advances could be "protected activity" capable of giving rise to a retaliation claim as a matter of law.[1]

For these reasons, Plaintiff's NYSHRL retaliation claim is dismissed as to Defendants Coleman, Hoffman, McRorie and Edmonds.

### 3.     NYCHRL (Count XXIV)

A retaliation claim under the NYCHRL requires that: (i) the plaintiff "took an action opposing her employer's discrimination," and (ii) "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action . . . ."  *Mihalik*, 715 F.3d at 112 (citation omitted); *see* N.Y.C. Admin. Code § 8-107(7).  These elements are construed more liberally under the NYCHRL than under its state counterpart, and the plaintiff can oppose discrimination merely by communicating her disapproval to the defendant.  *Id.*

---

[1] The Second Circuit has yet to settle this question.  *See Fitzgerald v. Henderson*, 251 F.3d 345, 366 (2d Cir. 2001).  Courts in this Circuit and elsewhere are split on the question of whether rejecting a harasser's sexual advances constitutes protected activity.  *Compare, e.g.*, *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438-39 (S.D.N.Y. 1996) ("[E]ven the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances, [or] every harassment claim would automatically state a retaliation claim as well."); *and LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) (holding that the rejection of sexual advances is not a protected activity), *with Laurin v. Pokoik*, No. 02 Civ. 1938, 2005 WL 911429, at *4 (S.D.N.Y. Apr. 18, 2005) (holding that the rejection of sexual advances is protected activity where plaintiff had few other avenues of complaining); *and Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (holding that the rejection of sexual advances is "the most basic form of protected activity").

(citing *Albunio v. City of New York*, 947 N.E.2d 135, 138 (N.Y. 2011)).  Nevertheless, even under the NYCHRL, there must be a causal connection between the plaintiff's opposition and the defendant's conduct.  *See Weber v. City of New York*, No. 11 Civ. 5083, 2013 WL 5416868, at *30 (E.D.N.Y. Sept. 29, 2013); *Tse v. New York Univ.*, No. 10 Civ. 7207, 2013 WL 5288848, at *17 n.17 (S.D.N.Y. Sept. 19, 2013).

Although the NYCHRL provides a broader basis for liability than the NYSHRL, Plaintiff has failed to state a retaliation claim under the city law against Defendants Coleman, Hoffman, McRorie and Edmonds for the same reason that she has failed to do so under the NYSHRL.   She has not alleged that any wrongful acts were retaliatory.  Consequently, Plaintiff's NYCHRL retaliation claim is dismissed as to those Defendants.

### III.    § 1983 Failure to Train and Supervise Claims Against City (Counts VIII & IX)

Plaintiff asserts that the City is liable for her injury because it failed to train and supervise its employees to such an extent that the failure amounted to deliberate indifference to the constitutional rights of people like Plaintiff.  The Complaint fails to plead these claims.

While a city may not be sued under § 1983 "for an injury inflicted solely by its employees or agents," it can be liable if the infliction on plaintiff of a constitutional injury was the result of a municipal "policy or custom."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  A city "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice' . . . ."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).  A city's failure to train or supervise constitutes "deliberate indifference" when three requirements are met: (1) "a policymaker knows to a moral certainty

18

that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted) (citing *Walker v. City of New York*, 974 F.2d 293, 297-8 (2d Cir. 1992)). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citation and internal quotation marks omitted); *see Chamberlain v. City of White Plains*, No. 12 Civ. 5142, 2013 WL 6477334, at *16-18 (S.D.N.Y. Dec. 10, 2013) (citing *Connick* to rule on a motion to dismiss a failure to train claim).

Here, of the three prior incidents described in the Complaint, only two involve officers who engaged in sexual harassment toward subordinates. In neither case is the Court able to infer that the disciplinary actions – penalties of 60 vacation days and ultimately forced retirements in both – were unconstitutionally insufficient, and the Complaint's conclusory characterization of these penalties as "slap[s] on the wrist" does not change that fact. Moreover, the four incidents of sexual harassment, including Plaintiff's own alleged incident, occurred in four different offices across three boroughs. In light of the sparseness and dissimilarities of the relevant incidents alleged, the Court cannot infer a "pattern of similar constitutional violations" from the Complaint, let alone one that more training or supervision could have alleviated. *Walker*, 974 F.2d at 297; *see, e.g.*, *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that two incidents from separate units were insufficient to state a failure to train claim).

19

Although the Supreme Court in *Connick* left open the possibility that a single incident could support a failure to train claim where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations," 131 S. Ct. at 1361, this theory is inapplicable here.  First, there is some doubt as to its continued vitality.  *Chamberlain*, 2013 WL 6477334, at *17.  But even if the single-incident theory were applicable, the constitutional consequences of the allegedly inadequate discipline against Lieutenant Marchese – the issuance of a Complaint Report, an order to attend a remedial seminar and a transfer out of the 25th Precinct – cannot be said to be "so patently obvious" as to allow Plaintiff to bypass the requisite showing of a pattern.

Because Plaintiff has failed to allege the deliberate indifference necessary for municipal liability under § 1983, Plaintiff's failure to train and supervise claims against the City are dismissed.

## IV.    Plaintiff's First Amendment Retaliation Claim

Finally, Plaintiff claims that Defendants violated her First Amendment right to free speech by retaliating against her when she spoke out about her treatment.  This claim is also dismissed.

"Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  The first inquiry is further subdivided into two questions: (1) whether the

20

employee spoke "as a citizen" or "pursuant to [her] official duties," and (2) whether the speech was on "a matter of public concern." *Garcetti*, 547 U.S. at 421-23.  For purposes of this motion, Defendants argue only that Plaintiff did not speak on "a matter of public concern."

"'Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)).  "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Id.* (quoting *Lewis*, 165 F.3d at 163).  "A generalized public interest in the fair or proper treatment of public employees is not enough." *Id.* at 190.  Where the plaintiff's complaints "concern[] essentially personal grievances and the relief [the plaintiff] seeks is for himself alone," they are not considered matters of public concern warranting First Amendment protection. *Id.*  However, "[t]he fact that a statement was made to the employer in private is not determinative of whether its subject was a matter of public concern." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011).

Reviewing the record as a whole, the Court finds that Plaintiff's complaints concerned essentially personal grievances and are of insufficient public concern to warrant First Amendment protection.  According to the Complaint, Plaintiff made four internal complaints, participated in an internal interview, and "frustrated that her complaints of sexual harassment and corruption were not being taken seriously, as a citizen she decided to go public and granted an interview to the New York Daily News."  The alleged facts are comparable to those in *Saulpaugh v. Monroe Cmty. Hosp.*, in which the Second Circuit observed, "[T]here is no indication that the plaintiff wanted to debate issues of sex discrimination, that her suit sought

relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention."  4 F.3d 134, 143 (2d Cir. 1993) (internal quotation marks and citations omitted).  In that case, the plaintiff claimed that she had been sexually harassed by her supervisor under the threat of termination, retaliated against when she reported his behavior, and eventually terminated.  *Id.* at 138-41.  The Second Circuit observed that "[h]ad [the plaintiff's] complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of public concern. . . . Here, however, there has been no violation of the First Amendment, because [the plaintiff's] complaints were personal in nature and generally related to her own situation."  *Id.* at 143.  On that basis, the Second Circuit found that the plaintiff's speech failed the "public concern" threshold.  Likewise here, each of the complaints lodged by Plaintiff – to Lieutenant Edmonds, the OEEO, the IAB, the QAD and the New York Daily News – concerned only Plaintiff's own situation and did not hint at broader problems.  To find Plaintiff's First Amendment claim valid on the alleged facts alone would constitute an impermissible "'constitutionaliz[ation of] the employee grievance.'"  *Garcetti*, 547 U.S. at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal of the Complaint is DENIED as to Plaintiff's claims of sexual harassment and hostile work environment against Defendant Edmonds and GRANTED in all other respects.

For ease of reference, the claims dismissed by this decision are: (i) retaliation under the First Amendment and § 1983 (Count IV and XIII); (ii) failure to train and supervise under §

1983 (Counts VIII and IX); (iii) sexual harassment under § 1983 and New York state and city laws, as to Defendants Coleman, Hoffman and McRorie (Counts X, XVI and XXI); (iv) retaliation under New York state and city laws, as to Defendants Coleman, Hoffman, McRorie and Edmonds (Counts XIX and XXIV); and (v) hostile work environment under § 1983 and New York state and city laws, as to Defendants Coleman, Hoffman and McRorie (Counts XIV, XX and XXV).

Claims that remain after this decision and Plaintiff's voluntary withdrawal of claims in connection with this motion are: (i) sexual harassment under § 1983 and New York state and city laws, as to Defendants Marchese and Edmonds (Counts X, XVI and XXI); (ii) retaliation under New York state and city laws, as to Defendant Marchese (Counts XIX and XXIV); and (iii) hostile work environment under § 1983 and New York state and city laws, as to Defendants Marchese and Edmonds (Counts XIV, XX and XXV).

The Clerk of the Court is directed to close the motion at Docket No. 11.

SO ORDERED.

Dated: January 9, 2014
    New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE